CHICAGO, BURLINGTON & QUINCY RAILROAD COMPANY V. MAGGIE SULLIVAN, ADMINISTRATRIX.

[FILED OCTOBER 23, 1889.]

1. **Master and Servant:** NEGLIGENCE: FELLOW SERVANTS: VICE-PRINCIPALS. In an action by an administratrix to recover damages for the death of the decedent, a charge to the jury that "if they believe from the evidence that the deceased, James Sullivan, came to his death through the wrongful act, default, or negligence of defendant or its servants or employes, and not through his own wrongful act or negligence, then they will find for plaintiff and assess her damages at such sum as they believe from the evidence she should recover, not exceeding the sum claimed in her petition," is too broad and indefinite, and fails to distinguish between the acts of a vice-principal and fellow servant.

2. **Corporations:** VICE-PRINCIPAL. A person who is clothed by a corporation with the control and management of a distinct department in which his duty is that of direction and superintendence is a vice-principal.

ERROR to the district court for Richardson county. Tried below before BROADY, J.

*T. M. Marquett,* and *J. W. Deweese,* for plaintiff in error:

Under a similar state of facts it has been held in Missouri that a car repairer could not recover. (*Renfro v. R. Co.,* 86 Mo., 302; *Cagney v. R. Co.,* 69 Id., 416; *Smith v. R. Co.,* Id., 32.) An employe accepting, knowingly, the risks of a situation, cannot complain if subsequently in-

43

jured by exposure to them. (Wharton on Negligence, 214.) That one is directed by a foreman to do what is his duty and is injured, does not render the company liable. (*Fraker v. R. Co.*, 30 Minn., 103.) The carelessness of other servants, including the foreman, is one of the risks assumed. (*Valtez v. R. Co.*, 85 Ill., 500.) If a railroad employe knows that the work is being done in an unsafe manner, and still continues it without complaint, he cannot recover for injury. (*I., B., etc., R. Co. v. Flanigan*, 77 Ill., 365; *Penn. Co. v. Lynch*, 90 Id.; 333; *Dillon v. R. Co.*, 3 Dill. [U. S. C. C.], 320; *Hughes v. R. Co.*, 27 Minn., 137; *Porter v. H., etc., R. Co.*, 71 Mo., 67; *O'Rorke v. R. Co.*, 18 Am. & Eng. R. R. Cases, 19.) Sullivan and the foreman were engaged directly in the same line of work and the master is not liable. (*Laning v. R. Co.*, 49 N. Y., 524; *Farwell v. R. Co.*, 4 Metc. [Mass.], 49; *Lawler v. R. Co.*, 62 Me., 463; *Peterson v. R. Co.*, 67 Mich., 102; *McBride v. R. Co.*, 21 Pac. Rep., 687; *Wilson v. Quarry Co.*, 42 N. W. Rep., 360; *Central R. Co. v. Kitchen*, 9 S. E. Rep., 827; *McCosker v. R. Co.*, 84 N. Y., 77.) If railroad employes disregard regulations in running trains and other employes are injured thereby, the negligence is that of fellow servants. (*Rose v. R. Co.*, 58 N. Y., 221.) The master need not personally oversee the work, and negligence by other servants is a risk of the employment. (*Slater v. Jewett*, 85 N. Y., 61; *Gardner v. R. Co.*, 58 Mich., 584.) The rank of the servants is of little consequence. (Cooley, Torts, 544*; *Hallihan v. R. Co.*, 71 Mo., 113; *Smith v. Potter*, 46 Mich., 258.) The foreman in this case was one of the workmen. (*B. & M. R. Co. v. Crockett*, 19 Neb., 146.) The case was thrown to the jury with no definite rule to guide them. (*B. & O. R. Co. v. Carr*, 17 Atl. Rep., 1053.)

*Frank Martin*, for defendant in error:

The company is liable for the foreman's negligence. (*R. Co. v. Salmon*, 14 Kas., 512; *H., etc., R. Co. v. Fox*, 31

Id., 586; *R. Co. v. Lewis*, 33 O. S., 196; *R. Co. v. Lavalley*, 36 Id., 221; *C., etc., R. Co. v. Lundstrom*, 16 Neb., 262.) Sullivan was inexperienced and it was negligence for the company to place him, without warning, in a dangerous situation. (*Parkhurst v. Johnson*, 50 Mich., 70; *Coombs v. Cordage Co.*, 102 Mass., 572 *L., etc., R. Co. v. Collins*, 2 Duv. [Ky.], 114.) The question of whether or not a servant is subordinate, is one of fact for the jury. (*R. Co. v. Lewis, supra.*) In many of the cases cited by counsel for plaintiff in error great stress is laid on the fact that the injured party was experienced and must have known of the dangers.

MAXWELL, J.

This action was brought by the defendant in error in the district court of Richardson county to recover damages for the death of James Sullivan, who was killed by the cars of the plaintiff in error through the alleged negligence of the railway company.

On the trial of the cause the jury returned a verdict in favor of the plaintiff below (defendant in error) for the sum of $1,500, upon which judgment was rendered. It appears from the testimony that early in March, 1888, one James Sullivan entered into the employment of the plaintiff in error as car repairer at Falls City. It also appears that Sullivan was inexperienced in that business, and that he was placed by the master workman under the care of one McCarty to learn his duties, as McCarty had given the company notice that he intended to quit on April 1, and Sullivan was to take his place. The direct examination of McCarty is as follows:

Q. Do you remember the time of his (Sullivan's) death?
A. Yes, sir.
Q. Do you know the cause of his death?
A. Yes, sir.

Q. Tell the jury.

A. Well, he was killed by the cars. He was crushed between two cars.

Q. Whereabouts?

A. On the east end of the stock track.

Q. How many railroad tracks are there at the place you speak of?

A. There are five or six, I don't just remember which.

Q. Beginning at the south side of the railroad tracks, which one was it he was injured on?

A. The second one.

Q. The second one from the south?

A. Yes, sir.

Q. Tell the jury where he was and what he was doing when he was hurt.

A. He was working between two cars. The cars were apart probably three feet on the east end of the stock track and the train came in on the passenger track and pulled up and set the cars in from the west end on the stock track. There were several spaces along on the track between the cars, I don't remember just how many, and they struck them at that end and run the cars down, and he was at work in between the cars and it caught him right in across here somewhere. (Witness indicates.)

Q. Were you along in there between the cars when he was hurt?

A. No, sir; I was standing up.

Q. How far apart were the cars — the one he was working at and the one next him?

A. About three feet.

Q. What was his business?

A. Car repairer.

Q. How long had he been engaged at that?

A. Ten, twelve, or fourteen days; I don't know just how long?

Q. What was he required to do?

A. He was required to do anything there was to do.

Q. Was he the judge of what was to be done, or what was his situation?

A. No, sir; he was under my orders as long as I was there; I intended to quit the first of the month and the foreman told me to learn him all I could so he could take my place.

Q. Had he any experience on railroads before that?

A. Not to my knowledge.

Q. When he was fixing that car where he was hurt, who had told him what to do; who had put him there?

A. I had told him.

Q. Now, what was the condition of the cars on that track west of where you were at work, so far as having brakes set?

A. I think the first car west of us — there were five or six west of us and then a space of five or six feet; and I think the cars didn't have any of the brakes set, and I know the first car on the east end didn't have the brakes set, because I set the brakes myself.

Q. When you and he went to work there was there any connection between the track you were working on and any other track so a car could get in?

A. No, sir; because the old main line was blocked. There was a train standing on it, as there wasn't room in the yard to put it on the side track.

Q. What do you know about the cars being set in on that track that caused the other cars to move?

A. They struck them at the west end with the engine.

Q. How did they set them in?

A. The train came from Atchison, from the east, and pulled up over the Pacific track and backed the train right in.

Q. Did they have to open any tracks?

A. Yes; they had to open one switch.

Q. How far was it from where you were at work?

A. A half mile I guess.

Q. What do you know about them setting the cars in on that track?

A. I don't know; only they struck the cars at that end and the cars, not having the brakes set, run down the track and struck the cars next us, and they didn't have the brakes on.

Q. Do you know whether there was anyone on the cars that were set in at that time to set the brakes or stop the cars?

A. No, sir; I think not. When I got him out, and laid him down by the cars, I ran up along the track and I met a brakeman, but he was on the ground.

Q. Which brakeman was it?

A. I don't know which one.

Q. Where did he come from?

A. He was on that train.

Q. A brakeman on the train that set the cars in on the track?

A. Yes, sir; and he afterwards said he never would set cars in again without setting brakes.

Q. How long was it, after he was injured, till he died?

A. He got hurt somewhere between one and two o'clock and he died the next morning between eight and nine, I believe.

Q. Do you know about his condition before that; whether he was a reasonably stout, hearty, young man?

A. He was, as far as I know, and I knew him for several years.

Q. Had you been there with him all that night?

A. Yes, sir.

Q. What had he to do when you were there in regard to any of the work, or anything to be done.

A. He was to help do all the work there was to be done.

Q. Under whose directions?

A. The foreman's.

Q. Who was the foreman?

A. Culper was.

Q. Was he there at night?

A. No; he was under my charge at night. Mr. Culper told him to do whatever I would tell him, because I was to quit at the end of the month and he was to take my place.

In the case of the *C., M. & St. P. R. Co. v. Ross*, 5 Sup. Court Reporter, 190, the question as to a vice-principal of a railway company was involved, and in a carefully prepared and elaborate opinion it was held in effect that one who is clothed by the corporation with the control and management of a distinct department, in which his duty is that of direction and superintendence, is a vice-principal. Justice Field, in his opinion in that case, said: "There is, in our judgment, a clear distinction to be made in their relation to their common principal, between servants of a corporation exercising no supervision over others engaged with them in the same employment and agents of the corporation, clothed with the control and management of a distinct department, in which their duty is entirely that of direction and superintendence. A conductor, having the entire control and management of a railway train, occupies a very different position from the brakeman, the porters, and other subordinates employed. He is in fact and should be treated as the personal representative of the corporation, for whose negligence it is responsible to subordinate servants. This view of his relation to the corporation seems to us a reasonable and just one, and it will insure more care in the selection of such agents, and thus give greater security to the servants engaged under him in an employment requiring the utmost vigilance on their part, and prompt and unhesitating obedience to his orders. The rule which applies to such agents of one railway corporation must apply to all, and many corporations operate every day several trains over hundreds of miles at great

distances apart, each being under the control and direction of a conductor specially appointed for its management. We know from the manner in which railways are operated that, subject to the general rules and orders of the directors of the companies, the conductor has entire control and management of the train to which he is assigned. He directs when it shall start, at what speed it shall run, at what stations it shall stop, and for what length of time, and everything essential to its successful movements, and all persons employed on it are subject to his orders. In no proper sense of the term is he a fellow servant with the fireman, the brakemen, the porters, and the engineer. The latter are fellow servants in the running of the train under his direction, who, as to them and the train, stands in the place of and represents the corporation.

"As observed by Mr. Wharton, in his valuable treatise on the law of Negligence: 'It has sometimes been said that a corporation is obliged to act always by servants, and that it is unjust to impute to it personal negligence in cases where it is impossible for it to be negligent personally. But if this be true, it would relieve corporations from all liability to servants. The true view is, that, as corporations can act only through superintending officers, the negligences of those officers, with respect to other servants, are the negligences of the corporation'·(sec. 232a)."

The above case is reported in 17 Am. & Eng. R. R. Cases, 501, and in a note it is said : "No rule has yet been laid down which can be applied with entirely satisfactory result. Whether or not a foreman or superintendent has the power to employ and discharge those acting under him, has been in some cases proposed as the crucial test of whether he is a vice-principal or not. (*Chapman v. Erie R. Co.*, 55 N. Y., 579 ; *Kansas Pacific R. Co. v. Little*, 19 Kas., 267; *Stoddart v. St. Louis, etc., R. Co.*, 65 M. , 514; *Hofnagle v. N. Y., etc., R. Co.*, 55 N. Y., 608 ; *Cook v. Hannibal & St. Joe R. Co.*, 63 Mo., 397; *Huntingdon & Broad Top R. Co.*

*v. Decker*, 82 Pa. St., 119; S. C., 84 Pa. St., 419; *Cumberland & P. R. Co. v. State*, 44 Md., 283; *Kansas P. R. Co. v. Salmon*, 11 Kas., 83; *Chicago & Alton R. Co. v. May*, 15 Am. & Eng. R. R. Cases, 320.)

"But this test is unsatisfactory. It is, we believe, true that in every case where the power to employ and discharge exists, the relation established has been held to be not that of a fellow servant, but of vice-principal. The correlative of this proposition does not, however, obtain. There are many cases where the right to employ and discharge is absent, in which, notwithstanding, the relation of vice-principal has been held to be established and liability has been imposed upon the company accordingly.

" (2) It is in some cases held that servants who are engaged entirely in different branches of railroad employment are not to be regarded as fellow servants within the meaning of the law. Accordingly some authorities are to the effect that a company is liable for injuries to train hands occasioned by the negligence of a repairman upon the track and *vice versa.* *   * (*Nashville & D. R. Co. v. Jones*, 9 Heisk., 27; *Ryan v. Chicago & N. W. R. Co.*, 60 Ill., 171; *Pittsburg, Ft. W. & C. R. Co. v. Powers*, 74 Ill., 341; *Toledo, W. & W. R. Co. v. O'Connor*, 77 Ill., 391; *Dick v. Indianapolis, etc., R. Co.*, 8 Am. & Eng. R. R. Cases, 101.)"

The cases relating to the subjects of vice-principal and fellow servants are involved in great conflict and confusion and it is impossible to harmonize them. Some of these cases seem to make distinctions without an essential difference in the facts. The subject is very fully discussed in the 7 Am. & Eng. Encyclopædia of Law, 838–844—and the general rule to be deduced from the later decisions is that it is not the rank of the employe but the nature of the duty with which he is clothed that is decisive, and in our view the classification made by the supreme court of the United States is correct and in consonance with our own decisions.

The above testimony of McCarty, therefore, if true—and that is a question for the jury—was sufficient to constitute him a vice-principal as to Sullivan under the rule stated by this court in *C., St. P., M. & O. R. R. Co. v. Lundstrom*, 16 Neb., 254; *S. C. & P. R. R. Co. v. Smith*, 22 Id., 780; *B. & M. R. R. Co. v. Crockett*, 19 Id., 145.

The court, however, at the request of the attorney for the defendant in error, gave the following instruction: " The jury are instructed that if they believe from the evidence that the deceased, James Sullivan, came to his death through the wrongful act, default, or negligence of defendant or its servants or employes, and not through his own wrongful act or negligence, then they will find for plaintiff and assess her damages at such sum as they believe from the evidence she should recover, not exceeding the sum claimed in her petition."

This was duly excepted to and is now assigned for error. It will be observed that the instruction is entirely too broad and general in its terms and fails to distinguish the acts of a vice-principal from those of a fellow servant, and was well calculated to mislead the jury and fails to state the law correctly. The other questions in the case are questions of fact upon which, to some extent, there is a conflict of testimony, and as there must be a new trial, they will not be discussed.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

COBB, J., concurs.

REESE, CH. J., dissenting.

I do not agree to the conclusion reached by my associates, that the giving of the instruction quoted in the opinion of the majority was necessarily prejudicial error; and will briefly state my reasons for such dissent.

I think it is true that the instruction, if taken alone and without qualification, would be insufficient as not fully stating the rule of negligence as applicable to cases of this kind. It must be conceded that the negligence of the "servants and employes" of the defendant would be its own negligence, for it acts only through its servants and employes. It can act in no other way. In addition to the instruction above referred to, the court, upon the request of defendant in error, gave instruction number four, and instruction number two given upon its own motion, both of which we here copy:

"4. You are instructed that the negligence of the defendant that would make it liable must be the negligence of the company itself or some superior agent who stood in place of the company as between it and the deceased Sullivan; and if you find that a car repairer, as a fellow laborer, worked with Sullivan, who had more experience and on that account was showing Sullivan how to do the work, was negligent and this negligence caused or contributed to the injury, the defendant would not be liable.

"2. The law of negligence as applied to this case is given in the instruction given at the request of the parties, to such an extent that but little need be added. The defendant railroad company is liable for the negligence of its servants superior in employment to the deceased at the time of his death, if the negligence of such superior servant caused the injury complained of and there was no contributory negligence on the part of deceased; but the defendant would not be liable for negligence of a fellow servant of deceased. A fellow servant, within the meaning of this proposition, means an associate employe with the deceased, in the same line of employment with the deceased, and without authority over the deceased more than the deceased had over such fellow servant in the work in which deceased was engaged at the time of the injury. The authority of a fellow servant to instruct another fellow servant less ex-

perienced as to the duties and dangers of the employment of itself does not prevent their being fellow servants within the meaning of the rule of law above mentioned."

It is a well established rule of law, and one which has been repeatedly recognized in this state, that the whole of the instructions given to a trial jury must be considered together, and if none of them mistake the law as applicable to the case on trial and they are susceptible of being harmonized, when so considered, they could not mislead the jury and a new trial will not be granted. Stated differently, if an instruction only partially states the rule to be applied, it will not be held to constitute reversible error if the rule is fully and correctly stated in another portion of the charge, and the whole instruction, when thus considered together, presents a correct and consistent statement of the law. (*Parish v. The State*, 14 Neb., 67; *S. C. & P. R. R. Co. v. Finlayson*, 16 Id., 584; *Gray v. Farmer*, 19 Id., 71.)

Applying this well recognized rule to this case, I can see no difficulty growing out of the instructions. The first one instructed the jury that if they found that the injury was caused by negligence of defendant, its servants or employes, and not by that of the deceased, the plaintiffs in the action should recover, and by the others they were informed what servants and employes were referred to and that all others should be excluded. I think this could work no prejudice.