UNION PACIFIC RAILROAD COMPANY V. PATRICK DOYLE.

·FILED FEBRUARY 3, 1897.   No. 7070.

1. **Master and Servant: VICE-PRINCIPAL: RAILROAD COMPANIES: IN-JURY TO EMPLOYE.** The defendant in error was a section hand in the employ of the railway company. He and others were hired by one Cochran, a section boss in the employ of the railway company, and they were under his control and direction while working on their section of the railway, and Cochran had authority to discharge the men hired by him. Cochran and his section men were

put to work on a gravel train of the railway company. This gravel train, the crew thereof, and all the men working thereon, including Cochran and his section men, while at work with the gravel train, were under the control, direction, and subject to the orders of a foreman named Forrest. Forrest was not invested with authority to hire or discharge the defendant in error. The defendant in error, while working on this gravel train, was injured, as he alleged, through the negligence of an order given by Forrest, and sued the railway company for damages. *Held*, That as to the defendant in error, Forrest was not a fellow-servant, but a vice-principal.

2. ———: ———. Whether one of several employes of the same master is a vice-principal as to his co-employes, or whether all are fellow-servants, is not always a question of fact, nor always a question of law. Generally it is a mixed question of law and fact, and to be determined in any case by the particular facts and circumstances in evidence in the case in which it is presented.

3. ———: ———. The fact that one employe is vested with authority to hire and discharge a co-employe is not conclusive evidence that as to such co-employe he is a vice-principal; nor does it follow that one employe is not a vice-principal as to his co-employes because not vested with the authority to hire and discharge them.

4. ———: ———: EVIDENCE. The most satisfactory evidence that one is, as to his co-employes, a vice-principal is that his co-employes are under his supervision, his control, and subject to his orders and directions.

5. ———: ———: ———. Evidence examined, and *held* (1) to sustain the finding of the jury that the negligence of the defendant in error was not the proximate cause of his injury; (2) not to sustain the finding of the jury that the negligence of the railway company was the proximate cause of the defendant in error's injury.

ERROR from the district court of Deuel county. Tried below before HOLCOMB, J. *Reversed.*

See opinion for references to cases.

*J. M. Thurston, W. R. Kelly,* and *E. P. Smith,* for plaintiff in error.

*John R. Brotherton* and *McClanahan & Halligan, contra.*

RAGAN, C.

Patrick Doyle brought this suit in the district court of Deuel county against the Union Pacific Railway Com-

pany (hereinafter called the "railway company") for dam-
ages which he alleged he had sustained by reason of the
negligence of the railway company. Doyle had a verdict
and judgment and the railway company brings the same
here for review on error.

1. We have carefully examined the complaints made
by the railway company as to the action of the district
court in permitting certain questions to be propounded
to and answered by its witnesses on their cross-examina-
tion, and have reached the conclusion that the court did
not err in that respect. It would subserve no useful pur-
pose to set out these questions in this opinion.

2. At the time the accident sued for herein occurred,
and before that time, Doyle was a section hand in the
employ of the railway company. He and a number of
other men were employed by one Cochran, who was what
is called a section foreman or boss in the employ of the
railway company. All these men were hired by Cochran,
the section boss, were subject to discharge by him, and
were under his direction and control while engaged in
working upon their section of the railway. At this time
the railway company had a gravel or work train on its
road hauling earth and gravel and placing them on the
track. Cochran and his gang of men were put at work
on this train, and the train crew and some other laborers
of the railway company on the train, and Cochran and
all his men, while working on the gravel train were un-
der the control, direction, and supervision of a foreman
named Forrest, but the latter had no authority to hire
Doyle nor to discharge him. The railway company com-
plains because the district court refused to instruct the
jury to the effect that the facts above narrated made
Forrest and Doyle fellow-servants. Whether one of sev-
eral employes of the same master is a vice-principal as
to his co-employes, or whether all are fellow-servants, is
not always a question of law nor always a question of
fact. Generally it is a mixed question of law and fact,
and, as was said in *Union P. R. Co. v. Erickson,* 41 Neb., 1,

we are not prepared to lay down any set rule as a test for determining when two or more employes are fellow-servants or one of them a vice-principal. The relationship existing between the employes of a common master is to be determined by the particular facts and circumstances in evidence in the case in which it is presented.

In *Chicago, St. P., M. & O. R. Co. v. Lundstrom*, 16 Neb., 254, Lundstrom was a day laborer in the employ of the railroad company and was one of a number of men employed on and about a construction train. This train and its crew were engaged in the business of clearing snow from the railway track. The train crew and all the men, including Lundstrom, engaged in working with the construction train were under the direction and subject to the control and orders of the conductor of that train. Lundstrom was injured by obeying an order of the conductor, the giving of which, he alleged, was negligence, and this court held that the relation existing between Lundstrom and the conductor of the train was not that of fellow-servants of a common master, but that as to Lundstrom the conductor was a vice-principal. The court said that the conductor represented the railway company, with all its authority and power.

In *Burlington & M. R. R. Co. v. Crockett*, 19 Neb., 138, the husband of the administratrix was boss or foreman of a gang of trackmen in the employ of the railroad company, and with his men was put to work on a gravel train hauling gravel and earth for repairing and strengthening the railway track. The gravel train and the section foreman and his men were all under the control and direction of the conductor of the gravel train. Crockett was killed by obeying an order of the conductor, which, it was alleged, was negligently given, and the court held that the conductor of the train and Crockett, the boss of the section gang, were not fellow-servants, but that as to Crockett the conductor of the train was a vice-principal.

In *Sioux City & P. R. Co. v. Smith*, 22 Neb., 775, Smith

was an employe of the railway company and engaged in the business of repairing bridges, water tanks, and telegraph lines. He and a number of other men were under the charge of a foreman named King. King and his men had possession of a hand car, which they used to ride on from their boarding place to the work, and after the day's work to ride back on to their boarding house. One evening after their work was finished King and his men got aboard this hand car for the purpose of going to their boarding house, and by the direction of King the car was pushed up to the rear of the caboose of a freight train and some of the men held to the rear car of the freight train, and thus the hand car was carried forward on the track as rapidly as the freight train proceeded. The freight train ran on a curve and King gave an order to his men to let go the freight train, but Smith did not hear this order and held on to the way car in front. King then applied the brake to the hand car, which caused it to instantaneously stop, and Smith was thrown off the hand car and injured. He sued the railway company for damages, alleging that the act of King in applying the brake to the hand car caused his injury, and that such act was negligence. The railway company insisted that Smith and King were fellow-servants, but the court held that King was a vice-principal.

In *Chicago, B. & Q. R. Co. v. Sullivan*, 27 Neb., 673, a man named McCarty was a car repairer for the railroad company. He gave notice to the company that he intended to quit at a day named in the future, and thereupon the company employed Sullivan to take his place and put Sullivan to work under McCarty's orders and directions, so that he might learn the duties of a car repairer before McCarty's time expired. Sullivan went in between or under some cars standing on a track at Falls City to make some repairs at the direction of McCarty, and while there at work a train backed up against the cars under which Sullivan was at work and injured him. He sued the company for damages, alleging that his in-

jury was the result of obeying a direction of McCarty's, and that such direction was negligently given. This court reversed the judgment because of an instruction given by the trial court, but said that the evidence quoted above constituted McCarty a vice-principal as to Sullivan.

It is to be observed that in each of these cases the employe was held to be a vice-principal because of the fact that he had the control, supervision, and direction of the man injured; and the latter was subject to and bound to obey the orders of the party held to be a vice-principal. These cases control the question under consideration. Doyle was under the control and direction and subject to the orders of Forrest; it was his duty to obey whatever order or direction Forrest might give; Forrest and Doyle were, therefore, not fellow-servants.

*Palmer v. Michigan C. R. Co.*, 53 N. W. Rep. [Mich.], 397, is strikingly like the case at bar. In that case Palmer was a section hand on the Michigan Central railroad; had been employed by one Cavanaugh, who was a section foreman on said road. Cavanaugh and his men, including Palmer, were put to work loading steel rails on a moving train of flat cars owned by the railroad company. This train of cars, its crew, and Cavanaugh and his men, while engaged in loading these rails, were all under the direction of the assistant roadmaster. Palmer was injured, as he alleged, through the negligence of the assistant roadmaster, and the railway company contended that Palmer and the roadmaster were fellow-servants; but the court held that the assistant roadmaster was a vice-principal as to Palmer. The court said: "It is too clear to admit of argument that the assistant roadmaster had the exclusive, unconditional control of all the men engaged upon this work at the time of the accident. He had charge of and directed the method of its performance, and while it does not appear that he personally had anything to do with employing plaintiff in the first instance, yet his authority was so great that at least while engaged in this particular work he even had control

and direction over the section foreman." To the same effect see *Bloyd v. St. Louis & S. F. R. Co.*, 58 Ark., 66.

In *Chicago, M. & St. P. R. Co. v. Ross*, 112 U. S., 377, the supreme court of the United States held that a conductor of a railroad train, who has the right to command the movements of the train and to control the persons employed upon it, represents the company while performing those duties and does not bear the relation of fellow-servant to the engineer and other employes of the corporation on the train. The court said: The conductor of a railway train, who commands its movements, directs when it shall start, at what stations it shall stop, at what speed it shall run, and has the general management of it and control over the persons employed upon it, represents the company, and, therefore, that for injuries resulting from his negligent acts the company is responsible. If such a conductor does not represent the company, then the train is operated without any representative of its owner.

It is insisted in argument here that because Forrest was not invested with authority to hire and to discharge Doyle, that, therefore, he cannot be considered a vice-principal as to Doyle. It is to be observed that in none of the cases cited was an employe held a vice-principal as to his co-employes because of the fact that he had authority to hire or discharge such employes. All the cases cited make the employe a vice-principal because of his power of direction and control over his co-employes. If an employe be vested with authority to hire and discharge, that is evidence which tends pretty strongly to show that as to such employe he is a vice-principal, but we do not think it would be conclusive evidence that such relation existed; nor does it follow that one employe is not a vice-principal as to his co-employes because he is not vested with authority to hire and discharge them. The most satisfactory evidence that one is, as to his co-employes, a vice-principal, is that his co-employes are

40

under his supervision, his control, subject to his orders and direction.

But it is insisted that the supreme court of the United States has overruled *Chicago, M. & St. P. R. Co. v. Ross*, *supra*, and that, therefore, that case should no longer be followed. We have not been able to find any case in which the supreme court of the United States has expressly said that it overruled, or intended to overrule, the Ross case. In *Baltimore & O. R. Co. v. Baugh*, 149 U. S., 368, an engineer and fireman were running on a locomotive not attached to any train and not in charge of any other employe of the road. A rule of the company provided that when an engine was running without a conductor that the engineer should be regarded as conductor and acted accordingly. The fireman was injured through the negligence of the engineer and sued the company for damages; but the court held, distinguishing the Ross case, that the engineer and fireman were fellow-servants; that the engineer was not as to his fireman a vice-principal. It seems to us that the decisions in the Ross case and the Baugh case cannot be reconciled.

In *Northern P. R. Co. v. Peterson*, 51 Fed. Rep., 182, 16 Sup. Ct. Rep., 843, Peterson was a section hand in the employ of the railroad company and was at a station called Old Superior, on the railroad. Work became scarce and he applied to the roadmaster for employment. The latter gave him a pass to a station on the road named Poplar in order that he might go there and obtain work on the road. At that station was a number of men under a foreman named Holverson. These men were called an "extra gang," and their duty was to go over some two or three sections of the road and assist the regular section gang in keeping the track in repair. Holverson employed Peterson in his "extra gang." All the men under Holverson were hired by him, were subject to his orders, and he had authority to discharge them. While Peterson was at work on the track with other section men, all under the control and direction of Holverson,

he was injured, as he alleged, through Holverson's negligence. He sued the railroad company for damages; it defended on the ground that Holverson and Peterson were fellow-servants. But the court of appeals held that Holverson as to Peterson was a vice-principal. The supreme court of the United States reversed this judgment and held that Holverson and Peterson were fellow-servants. Mr. Chief Justice Fuller and Justices Field and Harlan dissented, and it is to be regretted that they did not file dissenting opinions. The court based its decision upon the ground that Holverson was not a "chief" of a separate and distinct department or branch of the business of the railroad company. This decision in effect not only overrules the Ross case but practically destroys the doctrine of vice-principal in railroad cases. The logical effect of this decision is that all section men, track repairers, section bosses, bridge repairers and their bosses, construction trains, work trains, and their conductors and foremen, are fellow-servants; and the roadmaster, and he only, as to them is a vice-principal, because he is the "chief in charge of that branch or department of the railroad company's business," namely, the care and repair of the track. We do not assume to criticise this opinion but we are at liberty to point out the result which must flow from it if it shall stand. The opinion attempts a classification for the operation of a railroad that no general manager would countenance for a moment. The managers of railroad corporations have not made the trackmen and the section men, the foremen of gravel and construction trains and the crews thereof, fellow-servants. They have divided their roads into sections, and on each section they have placed a number of men to repair and care for the track, and over these men they have placed a superintendent, a boss, or foreman, with authority to hire and to discharge these men, with supervision and control over them. This boss is not required to labor and is paid a higher wage than a common laborer; and to the road-

master, and to him alone, is this boss responsible. They have placed upon their roads certain construction and gravel trains. On these trains there is a conductor, an engineer, a fireman, a brakeman, and with these trains go a number of laborers, each gang under immediate charge of one or more bosses, and all these men, including the train crew, the bosses, and the common laborers, are placed in charge of a foreman who superintends, manages, controls, and directs when, how, and where the work shall be done, and this foreman is not made by the rules of the railroad company a fellow-servant with the men under his direction, but he is responsible for his conduct to the roadmaster.

We repeat that we have not examined these opinions of the supreme court of the United States for the purpose of criticism. For our part we are satisfied to follow the Ross case. The decisions of our own court in the 16, 19, 22, and 27 Neb. are all based upon the principles which control the Ross case, and whether it be considered as distinguished or overruled by the tribunal which rendered it, we still think it is law; and we are not prepared to adopt the doctrine that an employe, to become a vice-principal as to his co-employe, must be the "chief of a separate and distinct department or branch of the business of his employer." The court did not err in refusing to instruct the jury that Forrest and Doyle were fellow-servants.

3. Another argument is that the finding of the jury that Doyle's injury was not the result of his own contributory negligence is not sustained by sufficient evidence. The evidence shows that this gravel train consisted of an engine and tender next to which was a tool car. These were equipped with an air brake. Following the tool car were twelve flat cars and an ordinary caboose, connected together by means of links and pins, the space, or slack, between any two cars being about two feet. The train was standing upon the track. Forrest, the foreman in charge, was standing on the ground north of the

train and north of a ditch on the north side of the track. The men had finished shoveling the dirt from the car next to the caboose, to the ground. Forrest then said to Doyle: "Come down and shovel this earth between the rails." Doyle prepared to obey the order by stepping from the flat car to the platform of the caboose; at that moment Doyle heard Forrest call to the engineer to pull up a car length. The bell rung, the whistle sounded, the train moved, Doyle standing on the platform either intending to alight from the car while in motion or to alight after it stopped. The train moved at a rate of speed not to exceed a mile and a half an hour. Without warning to Doyle, Forrest gave a signal to the engineer for an instantaneous stop of the engine. The order was obeyed. The engine stopped instantaneously. The caboose on which Doyle was standing struck against the car in front of it and Doyle was thrown against the brake and injured. The jury, by its verdict, has said that Doyle was not guilty of contributory negligence in standing upon the platform of the caboose as he did while the train was moving, and we think the evidence sustains that finding. It may have been evidence of negligence for Doyle to stand there. When the engine stopped Doyle may have heard the clashing together of the cars in time to have braced himself to prevent a fall. He may have taken such precaution to brace himself as he thought necessary to his protection. Under the circumstances we do not think his not going into the caboose and taking a seat was conclusive evidence of negligence on his part. But whether Doyle's conduct, under the circumstances, was negligence upon his part was for the jury, and we cannot say that they reached a wrong conclusion in finding that he was in the exercise of ordinary care. In *Jeffrey v. Keokuk & D. R. Co.*, 9 N. W. Rep. [Ia.], 884, Jeffrey was employed as a shoveler upon a construction train. This train was equipped very much like the one in the case at bar. It had an engine, a number of flat cars, and a caboose. In the caboose the men

kept their dinner pails and coats. It was the custom of the men, when the work was finished and the train started in to the station, while the train was in motion, to put their tools into a tool box on a car on the train and to get their coats and dinner pails and be ready to leave the train immediately on its reaching the station. The construction train started to the station. The conductor was on the platform of the caboose and Jeffrey on the rear of the flat car in front thereof. As the train neared the station Jeffrey, having deposited his tools in the tool box, started back to the caboose to get his coat, and as he reached the rear end of the car next the caboose, and while standing there, he saw the conductor pull the pin which coupled the caboose to the train and give the engineer a signal. The train started forward with an accelerated speed. Jeffrey was thrown from the end of the car where he was standing, to the track, and run over by the caboose. The jury found that Jeffrey was in the exercise of ordinary care when he was injured and the supreme court of Iowa, reviewing the evidence, held that Jeffrey had the right to assume that the speed of the train would continue the same afterwards as before the caboose was uncoupled, and that he was not bound to suppose because he had seen the signal given to the engineer and seen the caboose uncoupled, that the car on which he was standing would be pulled forward with an "unusual jerk." In that case five seconds only intervened between the time when Jeffrey saw the signal and the occurrence of the jerk which threw him from the car on which he was standing.

4. But is there any evidence here to show that Doyle's injury resulted from the negligence of this railway company, or any one connected with it? Doyle knew that the train was in motion. He knew that it was being moved up about a car's length so that he and others might get off and shovel the earth between the rails, and he was charged with notice that when the car on which he stood had moved up about a car's length that it would

stop. The evidence that Forrest called out to the engineer to pull up a car's length does not justify a conclusion of negligence. The fact that the train moved at a mile and a half an hour does not justify a conclusion of negligence. The fact that the train stopped instantaneously does not justify a conclusion of negligence. Had Doyle and his co-laborers been at work shoveling earth from this train and Forrest had given a signal to start it without any warning thereof that would have been evidence of negligence. Had the train been in motion and these men shoveling the earth from the train and Forrest had given a signal to stop the train without any warning, that would have been evidence of negligence; but these are not the facts in this case. The work had been done. The order had been openly and notoriously given and heard by Doyle for the train to pull up about a car's length. The whistle had been sounded and the bell rung and Doyle knew not only that the train was moving but he knew that it was to move about a car's length, and when it had gone about that distance he knew that it was to stop. The negligence charged to the railway company here is not the starting of this train; not the speed at which it was moving, but its being stopped instantaneously without warning to Doyle. He knew when he first reached the platform of the car, and while he was standing there he knew that the train was being pulled up to a particular place and was likely to stop the moment it reached it. It is not for us to say whether Doyle was guilty of contributory negligence in standing on the platform as he did while the train was in motion. It is not for us to say that he was guilty of negligence in not watching and bracing himself and preparing for the stopping of the train. All that was for the jury and they have said that he was not guilty of contributory negligence under the circumstances, and we have no disposition to interfere with that. But the fact remains that if he was injured such injury was not the result of any negligent act or omission of this railway

company or any of its servants. Doyle's theory is that the train was moving very rapidly and that it was stopped instantaneously without notice to him, which threw him against the brake and hurt him. With all due respect to the jury, one of two things is not true. Either that train was not moving rapidly or it was not stopped instantaneously. A heavy locomotive engine, if moving rapidly, cannot be stopped instantaneously by an air break or any other appliance known. If it was not stopped instantaneously then there was no violent jamming of the caboose against the car in front of it, and to sanction the verdict of the jury finding both ways on that proposition is to judicially determine that the laws of nature which control the universe have no application in Nebraska. The judgment of the district court is reversed.

REVERSED AND REMANDED.