JACOB A. YOUNKIN V. WILLIAM R. ROCHEFORD ET AL.*

FILED MAY 3, 1906. No. 14,322.

Master and Servant: TORTS OF COEMPLOYEES. The master is not
liable for an injury inflicted upon one of his employees by the
tortious act of another outside of the course of his employment,
and this is true even though the coemployees are not fellow
servants.

ERROR to the district court for Douglas county: LEE S.
ESTELLE, JUDGE. *Affirmed.*

*John M. McFarland* and *Benjamin S. Baker*, for plain-
tiff in error.

*Crofoot & Scott, contra.*

OLDHAM, C.

This was an action by the plaintiff in the court below
for the recovery of damages for personal injuries sus-
tained while in defendants' employ. There was a trial of
the issues to the court and jury, and at the close of all the
testimony a verdict was directed for the defendants.
From a judgment rendered on this verdict, plaintiff has
appealed to this court.

The facts upon which plaintiff predicated his right of
recovery are as follows: For several years preceding the
injury complained of defendants had been engaged in
making and burning brick in the city of Omaha. Plaintiff
had been in the employ of defendants at various times for
several years preceding his injury and had engaged in
various classes of work in the yards, sometimes off-bearing
the brick, and at other times placing the brick in the kilns,
and attending the burning of the kilns. All of the work
done on the yards was under the direction of the foreman,
Mr. Zarp. One O'Mara was an engineer employed by
defendants to run a stationary engine, used for the purpose

* Rehearing allowed. See opinion, p. 531, *post.*

of grinding the clay and moulding it into bricks on a table, from which the off-bearers removed them to the drying sheds. The top of this table was oiled by O'Mara, that the bricks might be easily removed and retain their form as moulded. O'Mara had a bucket in which he mixed the oil for this purpose, as well as for oiling the engine. The kilns in which the brick were burned were a considerable distance from the stationary engine, the one on which the injury was received being about 100 feet away.

At the time of the injury, plaintiff was on the side near the top of a kiln of brick which he was burning. The night foreman had taken the oil can used by O'Mara from the stationary engine to another portion of the yards to use the oil in firing a kiln. When O'Mara came to his work he inquired for his oil can, and plaintiff told him where he had seen it. O'Mara went and got the bucket, which contained about three quarts of oil, and as he passed the mouth of the burning kiln on which plaintiff was at work he carelessly threw the oil into the mouth of the kiln. The flames rushed up the side and front of the kiln, burning plaintiff's face and arm, causing him to jump and receive severe injuries. That it was wanton negligence on the part of O'Mara to throw the oil into the mouth of the burning kiln when plaintiff was working on the side of the kiln very near by, and that this negligent act was the proximate cause of the injury complained of, is beyond dispute. If we should concede, for the sake of the conclusion, the proposition earnestly and ably contended for by plaintiff's counsel that O'Mara and plaintiff were not, at the time of the injury, fellow servants under the doctrine announced by this court in *Union P. R. Co. v. Erickson,* 41 Neb. 1; *Union P. R. Co. v. Doyle,* 50 Neb. 555; *Norfolk Beet Sugar Co. v. Koch,* 52 Neb. 197, and *Missouri P. R. Co. v. Lyons,* 54 Neb. 633, the question would still arise as to whether or not the undisputed facts in the record show a liability for which the master must respond. Under plaintiff's theory of the facts,

37

O'Mara was not within the course of his employment by the master when he threw the oil from the bucket into the burning kiln. If he had been a kiln-burner and had done this act while firing the kiln, or if he had been firing his engine, then his act would have been in the course of his employment. While the evidence shows that he used the oil bucket in connection with his work around the stationary engine and on the moulding table, yet this was the only use he made of it within the line of his duties. If the master, through his vice-principal, the foreman, had ordered O'Mara to throw the oil into the kiln, although such work was outside of the course of O'Mara's employment, there would be no doubt of the liability of the master; but no such order or direction was given by the foreman. Consequently, we cannot see how the act causing the injury can be regarded as anything except the wanton negligence of O'Mara outside of the course of his employment. The rule is that a master is not liable for an independent tort committed by his servant. The only exception to this rule occurs where a contractional relation exists between the injured party and the master that imposes on the latter a very high degree of care in protecting against injury; such as the obligation which a common carrier owes to passengers, or the duty an innkeeper owes to his guests. In each of these latter cases, the master may be compelled to respond for injuries inflicted wantonly by servants outside of the course of their employment and in direct violation of the positive commands of the master. But there was no such contractual relation existing between defendants and plaintiff. Consequently, defendants are not liable for the independent tort committed by O'Mara.

We therefore recommend that the judgment of the district court be affirmed.

AMES, C., concurs.

EPPERSON, C., dissents.

By the Court:  For the reasons given in the foregoing opinion, the judgment of the district court is

AFFIRMED.

The following opinion on rehearing was filed January 5, 1907. *Judgment of affirmance adhered to:*

1. Master and Servant: TORTS OF SERVANTS. A master is not responsible for the tortious or wrongful acts of his servant, when such acts are not directly authorized by him, nor done in the course or within the scope of the servant's employment.

2. Former opinion, *ante*, p. 528, adhered to.

BARNES, J.

The facts in this case will be found correctly stated in our former opinion herein, *ante*, p. 528.  A motion for a rehearing was sustained, and the case has been reargued to the court.  It appears that the district court directed the jury to return a verdict for the defendants, and this is the principal error complained of.  By our former opinion the judgment of the district court was affirmed.  It is now strenuously urged by counsel for the appellant, first, that the plaintiff and O'Mara, the person whose act caused the injury in question, were not fellow-servants; second, that the act in question was performed by O'Mara within the scope of his employment, or, in other words, while acting in the line of his duty to the common master, who is therefore liable for its consequences.

From the facts disclosed by the record it seems clear to us that the question of the defendants' liability does not depend on the relation which the plaintiff and O'Mara sustained to each other at the time the injury was inflicted, and we are not required to determine whether or not they were fellow servants.  Indeed, so far as this decision is concerned, it may be conceded that no such consociation existed between them as would create that relation.  We are thus brought face to face with the question:  Was the act complained of committed under such circumstances as

to require the master to respond in damages therefor under the rule of *respondeat superior?* On the trial plaintiff testified, in substance, that he was working for the defendants at the time the injury occurred, and had been employed by them for about nine years before that time; that O'Mara was also working for them, and had been in their employ for many years; that the business in which defendants were engaged was manufacturing brick; that it was O'Mara's duty to run defendants' stationary engine, which furnished the power for that purpose, and this was the only duty performed by him; that all of the men employed in the defendants' brick-yard were under the charge of and controlled by a foreman of the name of Zarp; that plaintiff was a burner, and was engaged in that work when he received his injuries; that on the morning of the 19th of September, 1903, while he was standing on the side of the defendants' brick-kiln, near the top, his feet resting on a four-inch projection on the casing, his position being just above the second arch, and while engaged in repairing the casing to the kiln, he heard O'Mara making inquiry for the bucket, meaning a galvanized bucket used about the yard and in what was called the oil house for the purpose of mixing the oils and carrying kerosene or coal oil to the kiln with which to start the fires; that Zarp and the others said they did not know where it was; that having seen the bucket just before the injury occurred he told O'Mara that it was around on the side of the kiln near the post, or words to that effect; that O'Mara took up the bucket, which contained about three quarts of coal oil, stepped to the second arch and threw the oil on the fire. The fire was burning brightly at the time, and the result of O'Mara's act was a kind of an explosion. The flames from the burning oil ran up the kiln, both inside and outside of the casing, and burned him very severely. (Then followed a description of his injuries, together with a statement of the damages he claims to have sustained thereby.) Later on, in answer to questions propounded by his counsel, plaintiff also testified as follows: "Q. Was he in the

employ of the defendants? A. Yes, sir. Q. O'Mara? A.
Yes, sir. Q. The engine which he was operating, of which
he was the engineer, is it a stationary engine? A. Yes, sir,
stationary engine. Q. What did that engine do, what
part of the work? A. It ran the machinery that made the
brick. Q. That made the brick? A. Yes, sir. Q. Can
you tell what purpose the oils you say were mixed in this
bucket were used for? A. Yes, sir. It was used on the
roller to oil the tables. Q. And the tables were used for
what purpose? A. For making or manufacturing of brick.
Q. Bricks are pressed down on that table? A. Yes, sir.
Pressed in it. Q. Pressed in that table? A. Yes, sir. Q.
Your employment was with the burning of the kiln,
only? A. Yes, sir. Q. What work did Mr. O'Mara per-
form other than that of firing or operating the engine?
A. None. Q. What work had O'Mara to do, if anything,
with the burning of the kiln? A. Nothing whatever to do.
He had nothing whatever to do with the burning of the
brick. Q. What work, if any, did you and Mr. O'Mara do
in common with each other? A. None."

There is no evidence in the record to show, or by which
it can be inferred, that it was any part of O'Mara's duty
to use the oil bucket in question in any manner whatever,
and plaintiff's own evidence seems to conclusively estab-
lish the fact that when O'Mara went to the kiln, obtained
the bucket and threw the oil contained in it onto the fire
he was not performing any duty which he owed to the
defendants by reason of his employment.

It is a general rule of law that a principal or master is
civilly responsible for wrongs committed by his agent or
servant, while attending to his business, through inatten-
tion, negligence or want of skill. It is perhaps the only
branch of the doctrine of negligence upon which all the
cases unite, and as to which there is no dispute. It is a
rule so plain and easy of application that it cannot be
made clearer by illustration. This rule, however, implies
that the master will not in any case be liable for wrongs
committed by the servant, while not acting about the

master's business; or what is substantially the same thing, not acting within the scope of his authority or in the line of his duty. This rule is so reasonable that the grounds on which it rests need scarcely be suggested. In all the affairs of life, men are constantly obliged to act for or by others; but no one could venture to so act if the mere circumstance that he employed another to act for him about any general or particular business made him an insurer against all wrongs which such person might possibly commit during the period of such employment. 2 Thompson, Negligence, sec. 2,333; *Wright v. Wilcox,* 19 Wend. (N. Y.) 343; *Douglass v. Stephens,* 18 Mo. 362; *Hudson v. Missouri K. & T. R. Co.,* 16 Kan. 470; *Yates v. Squires,* 19 Ia. 26; *Porter v. Chicago, R. I. & P. R. Co.,* 41 Ia. 358; *Little Miami R. Co. v. Wetmore,* 19 Ohio St. 110. In *Hudson v. Missouri, K. & T. R. Co., supra,* Mr. Justice Brewer speaking for the court, said:

" 'A master is ordinarily liable to answer in a civil suit, for the tortious or wrongful acts of his servants, if those acts are done in the course of his employment in his master's service.' * * * 'This negligence must be in the course, or, as it is sometime called, "scope" or "range" of the latter's employment.' * * * 'The true rule is, that the master is only responsible so long as the servant can be said to be doing the act, in the doing of which he is guilty of negligence, *in the course of his employment as servant.'* " In applying these rules to the facts of that case it was further said in the opinion: "The gist of the complaint is very fairly and forcibly stated by the learned counsel for the plaintiff in error, when they say, 'the plaintiff at the time he received the injury complained of was rightfully in defendant's depot inquiring about and demanding the freight of his principals of and from the said agent of the defendant; and while there, in the prosecution of his duties with the said defendant, and in their depot, he received from the said agent, not the freight of his principals, but the iron poker of the defendant, causing the injury complained of.' In other words, Trotter

was employed to deliver freight; plaintiff came and demanded freight; Trotter replies to his demand with an assault. Was such assault in the course of Trotter's employment? Did it grow out of any services he was engaged in, or was it in the line of his duty? It seems to us it was clearly disconnected therefrom, and a mere volunteer assault. True, the employment may have given the opportunity and occasion, but it was not an act which in any fair sense the company could have been said to have employed him to do, or to have anticipated that he would do, nor an act which was the act of the company.  *  *  *  A party goes into a store to purchase goods, and is therefore rightfully there. He makes an inquiry as to the price of an article of a clerk behind the counter, who in reply takes a weight and knocks him down with it. Can this be said to be an act which the proprietor contemplated, when he employed the clerk? That it was in the line of the clerk's employment, and that therefore the employer was responsible? But the cases are parallel. The employment in each furnishes the opportunity and the occasion; but in each the act is not one the agent was employed to perform, nor within the scope of his employment."

So, in the case at bar, the act of O'Mara in throwing the oil upon the fire cannot be said, in view of the evidence, to have been committed in the line of his employment. If it be insisted that we should presume that O'Mara was performing a duty he owed to the master, and was acting within the line of his employment when he went to the kiln, procured the bucket, and threw the oil on the fire, the answer is, the plaintiff by his own testimony has rendered it impossible to indulge in such a presumption. He states positively that the only duty O'Mara was to perform, and did perform, for the common master was that of firing and running the stationary engine; that he performed no other duties whatsoever; that he had nothing whatever to do with the burning of the brick, and it is not shown that his employment required him to use or empty the oil bucket for any purpose whatever. As was well said in our former

opinion, the act causing the injury cannot be regarded as anything but the wanton negligence of O'Mara, outside of the course of his employment. Therefore, in view of the general rule that the master is not liable for an independent tort committed by his servant, and because the plaintiff's evidence does not bring this case within any exception to the rule, it seems clear that the defendants are not liable for the consequences of the act which is the foundation of his complaint.

For the foregoing reasons, our former opinion affirming the judgment of the district court is adhered to.

AFFIRMED.