LOTILA HERRINGTON, as Administratrix, etc., of WALLACE HERRINGTON, Deceased, Plaintiff, *v.* THE LAKE SHORE AND MICHIGAN SOUTHERN RAILWAY COMPANY, Defendant.

*An employer is not liable for a death resulting from the negligence of a co-employee.*

Where, upon the trial of an action brought to recover damages resulting from the death of the plaintiff's intestate by reason of the alleged negligence of the defendant, it is shown that the accident which caused the death of the plaintiff's intestate was the result of negligence on the part of a co-employee of the plaintiff's intestate, damages therefor cannot be recovered from the employer.

MOTION by the plaintiff, Lotila Herrington, as administratrix, etc., of Wallace Herrington, deceased, for a new trial on a case containing exceptions, ordered to be heard at the General Term in the first instance, upon the verdict of a jury, in favor of the defendant, rendered by direction of the court, after a trial at the Erie Circuit, on the 21st day of December, 1894.

*George M. Osgoodby*, for the plaintiff.

*James Fraser Gluck*, for the defendant.

HAIGHT, J. :

This action was brought to recover damages for the alleged negligent killing of the plaintiff's intestate.

It appears that Wallace Herrington, the deceased, in his lifetime was in the employ of the defendant as a fireman; that on the occasion of the accident in question he was acting as fireman on train No. 51, which was known as a fast freight train running on schedule time. It left Buffalo at two o'clock A. M., February third, for Erie, and consisted of twenty-four cars. It arrived at Ripley at six-two A. M., and was due in Erie at six-fifteen.

The seventh section of train 43 left Buffalo the evening before at eight-fifty, bound for Erie. It arrived at Angola at twelve-fifteen A. M., where it left a number of cars and then proceeded on its way as section 6 of train 43. It was run as an irregular on extra time. It arrived at Westfield at five-twenty-five A. M., and was delayed fifteen minutes. It reached Ripley at five-fifty A. M., at which place it was ordered to allow 51 to pass. The conductor then proceeded to run his train west of the station to a switch, and was in the act of backing his train upon the branch track when 51 approached, striking the second car from the engine, causing the death of the plaintiff's intestate. The collision occurred at six-two, twelve minutes after the arrival of train 43 at the station. Six minutes were occupied by the conductor in receiving and answering the dispatch. He then had but six minutes to switch his train from the main track on to the branch track, in order to allow 51 to pass in safety. No flagman was sent out by him in the rear to warn 51.

It appears there were but two brakemen upon train 51, and it is contended, on the part of the plaintiff, that the defendant was negligent in not providing more brakemen. We think, however, that the cause of the accident is not attributable to the want of brakemen on train No. 51, for it appears from the plaintiff's own showing that but an instant occurred after the engineer of No. 51 discovered that the tracks were blocked before the crash came. The engineer saw the cars on the main track as the headlight shone upon them, sounded the whistle and jumped from the train just as the collision occurred. The conductor tells us that the whistle sounded and the collision occurred almost immediately; "there was not time enough to think between it hardly;" that "there was not time for

anybody to do anything," so that it is apparent that had there been twenty brakemen upon the train they would have been powerless and unable to prevent the accident.

Again, it is contended that the defendant was negligent in not providing more servants upon train 43, but the plaintiff has neglected to furnish us with any evidence showing the number of servants engaged in operating that train. We are, consequently, left without evidence upon which this question can be determined.

It is further contended that the train dispatcher of the defendant was negligent in not having informed the conductor of train 51 that 43 was ahead of him and to be passed at Ripley.

It appears, as we have seen, that train 51 left Buffalo at two o'clock and received its first order at Washburn, wherein the conductor and engineer were directed to pass all trains they might overtake, and run to Erie ahead of them. This was at three-thirty-three o'clock. By this dispatch the conductor and engineer were warned that there were trains ahead which should be looked out for and passed. A second dispatch to the conductor and engineer of train 51 was sent to Washburn, in which they were directed to "approach Dunkirk carefully." At Dunkirk they were again communicated with and directed to "look out for freights ahead. Pass them at Brocton. Do your best to get in on time." It appears that they passed two freight trains at Brocton, and then proceeded on without further instructions until they collided with No. 43 at Ripley. It also appears that 43 was delayed at Westfield, a station between Brocton and Ripley, for a space of fifteen minutes; that a dispatch was sent to the conductor and engineer of 43 at Ripley to let 51 pass. This dispatch arrived at Ripley at five-thirty-three, nearly half an hour before 51 was due. Had it not been for the delay of 43 at Westfield, it would have been at Ripley within two or three minutes after the arrival of the dispatch, and would have had twenty-five or twenty-six minutes in which to take the siding and clear the main track. It appears to us that the orders were ample and proper, and had it not been for causes over which the train dispatcher had no control, no accident would have occurred. But, as we have seen, 43 was delayed fifteen minutes at Westfield, and when it reached Ripley had but twelve minutes left in which to take the siding. The conductor, knowing of this delay, and that

he was being followed by a train running on schedule time, should have sent out a warning to the approaching train, so as to have avoided the collision. In this he was negligent, and it is quite evident that this negligence was the cause of the accident. He was a co-employee of the plaintiff's intestate, and it consequently follows that the verdict was proper.

Plaintiff's motion for a new trial must be denied, and judgment ordered for the defendant upon the verdict.

DWIGHT, P. J., LEWIS and BRADLEY, JJ., concurred.

Plaintiff's motion for a new trial denied, and judgment ordered for the defendant upon the verdict.