amply sustained by the evidence. The burden is on the defendant of showing that such representations, or some of them, were false, and it has not sustained that burden.

Upon the whole case, we think no error was committed which requires us to reverse the judgment, and that the verdict of the jury was sustained by the evidence. The judgment is affirmed, with costs. All concur.

---

## PENDERGAST v. UNION RY. CO. OF NEW YORK CITY.

(Supreme Court, Appellate Division, First Department. November 13, 1896.)

1. CARRIERS OF PASSENGERS—NEGLIGENCE—LIMITATION OF LIABILITY.
    The fact that a foreman of a street-car company had at previous times notified an employé, when giving him a pass. that "he had to ride at his own risk, and that the company was entirely blameless," is not notice to the employé of a claim by the company of exemption from liability on all subsequent occasions on which he used the cars without pay.
2. MASTER AND SERVANT—FELLOW SERVANT—NEGLIGENCE.
    A laborer employed by a street-railway company, when returning home after a day's work, free of charge, on one of the company's cars, is not a fellow servant of the conductor, so as to preclude recovery for injuries received by falling through a gate on the car, left unsecured by the conductor's negligence.
3. SAME—EVIDENCE.
    A finding of negligence is sustained by evidence that the conductor saw that a gate on a street car was so bent that it could not be bolted, and that he neglected to tie or secure it, and that it flew open, and precipitated a passenger into the street.
4. SAME—STANDING ON PLATFORM OF CAR.
    It is not, as a matter of law, contributory negligence to stand on the back platform of a street car when all the seats in the car are filled.

Appeal from trial term, New York county.

Action by Kate Pendergast, as administratrix of Thomas Pendergast, deceased, against the Union Railway Company of New York City, to recover damages for the death of decedent, who was plaintiff's husband. From a judgment for $4,250 damages, and $548.95 interest from the time of decedent's death, and $378.05 costs, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

William N. Cohen, for appellant.
G. Washbourne, for respondent.

INGRAHAM, J. The plaintiff's intestate was in the employ of the defendant, as a laborer on its railroad, on the 13th of January, 1894. When his work for the day was finished, he got on one of the defendant's cars, with several of his fellow workmen, to be transported home. The foreman of the men made out a pass for eight men, and gave it to the conductor. There is no evidence that plaintiff's intestate knew that such pass had been presented to the conductor by Hogan, or that he was at all a party to the transaction. It may, however, be assumed that plaintiff's intestate un-

derstood that the railroad would carry him from his place of work to his residence, but that is the extent to which we are justified in assuming that plaintiff's intestate had any knowledge of the pass in question. Shortly after the car started, the plaintiff's intestate was thrown off; the evidence being that a gate near which plaintiff's intestate was standing was out of order,—so bent that it was impossible to securely fasten it in place,—and that it was in consequence of this insecurely fastened gate giving way that plaintiff's intestate fell. He received injuries which resulted in his death, and this action is brought to recover the damages sustained by his next of kin in consequence thereof.

Several defenses were interposed by the defendant. The first one that requires notice is that the plaintiff's intestate was riding upon a free pass, under a special contract between himself and the railroad company or its agents; that, while riding upon such pass, he waived all right of action against the railroad company in case of injury. We think, however, that the evidence was insufficient to establish that any such contract or understanding between the railroad company and the plaintiff's intestate was made. The proof of such a contract depends solely upon the testimony of Hogan, the foreman, who swears that at former times, when he had given a pass to plaintiff's intestate, he had informed him "that he had to ride at his own risk; that the company was entirely blameless." Hogan expressly testified that he did not give to the plaintiff's intestate a pass on the day in question, and that no statement was there made to the plaintiff's intestate as to what effect riding upon such a pass as he gave the conductor would have. He only testifies that, on prior occasions when he gave to him (plaintiff's intestate) a pass, he made this statement. Whatever effect this would have upon the liability of the defendant for any injury that resulted, or which was occasioned, to the recipient of the pass, upon the ride on which the pass was used, certainly it could not be held to extend to all subsequent occasions upon which plaintiff's intestate used the road. Contracts by which common carriers seek to exempt themselves from liability for the result of negligence on the part of their agents have been enforced only in case of proof that a contract was made, for a good consideration, between the carrier and the passenger, by which it was intended that the carrier should escape the result of its negligence. And it would be going greatly beyond the principles established in any reported case to which our attention has been called, or with which we are familiar, to hold that a conversation relating to the giving of a prior pass upon a road would relieve a carrier from all future acts of negligence in relation to the same passenger. As we think that there was no evidence here that would justify a finding of the jury that such a contract between the plaintiff's intestate and the defendant, as to the effect of his riding upon a pass on the night in question, was made, it is not material to examine the objections taken by the defendant to the admission of evidence as to this pass in question, or as to the terms and conditions upon which other passes had been issued by the railroad company.

The defendant also claims that the negligence of the defendant in regard to the proper fastening of this gate was the negligence of the conductor; that, the plaintiff's intestate being in the employ of the railroad company, the conductor was a fellow servant; and that the negligence was therefore that of a fellow servant with the person injured, and for that the defendant is not liable. It appears, however, from the testimony of Hogan, that, at the time that Pendergast got upon this car to go home, he had finished his day's work; that at the time he was on his way home from work. Assuming, without deciding, that plaintiff's intestate was, notwithstanding that he had finished his day's work, still in the employ of the defendant, and that he was with the conductor, a fellow workman, it was clearly the duty of the railroad company to furnish him with a safe and proper place to do his work, or to ride to and from his work, if they assumed so to convey him. That was clearly a duty that the railroad owed to plaintiff's intestate, and for a neg- lect properly to perform that duty the defendant would be liable. By its rules it has expressly made it the duty of the conductors of its cars to see to it that each gate is securely fastened, before starting the cars. It thus created these conductors its agents in performing this duty that it owed to its passengers,—as well to those in its employ as to those who were not,—to provide a suit- able and safe car in which to carry them to their destination. A neglect by its conductor to perform that duty would clearly not be the neglect of a fellow workman with the plaintiff's intestate, as the conductor was acting as the agent or representative of the corporation to perform the express duty which it owed to plaintiff's intestate. His neglect to perform such duty was the neglect of the company to perform the duty which it owed to the plaintiff's intestate, and not an act of negligence on the part of the conductor in the performance of the work of the corporation in which plain- tiff's intestate was engaged, as the plaintiff's intestate and the con- ductor were not fellow workmen in doing this particular work, or performing this particular duty, the neglectful performance of which occasioned the injury. This principle is too well settled to require the citation of authority, and it seems to us clear that in no sense could the neglect of this conductor to comply with the rules of the company, throwing upon him the duty of seeing that each gate is securely fastened before starting their cars, be con- sidered the neglect of a fellow workman with plaintiff's intestate. Where two persons are engaged in the performance of a common work for a master, and one of them is negligent in the performance of that work, and thus occasions injury to another workman en- gaged in the performance of the same work, the master is not lia- ble; but where the duty is upon the master to furnish a proper and safe place for an employé to work, and to furnish him with proper tools to do the work required by him, and he delegates that duty to another, it is entirely clear that such other, in the perform- ance of the delegated duty, is not a fellow workman with one who is injured because of the failure of the master, or his delegated agent, properly to perform the duty imposed upon him.

The other questions presented by the appellant upon this appeal hardly require extended notice. An examination of the testimony has satisfied us that the verdict of the jury that the defendant was guilty of a neglect of this duty, in not supplying to plaintiff's intestate a safe and proper car to carry him to his destination, was sustained by the evidence, as was the freedom of plaintiff's intestate from contributory negligence. The plaintiff's intestate, standing upon this car, whether touching the gate or not, was entitled to assume that this gate was so fastened that it was not a trap for an unwary passenger, so that, upon the slightest pressure upon it, it would give way and precipitate him into the street. It is said that this gate was placed upon the platform for the purpose of preventing passengers from alighting from the car upon the track of the company used by cars proceeding in an opposite direction; but, if it was so insecurely fastened that the moment it was touched it would spring open, it would not be useful for the purpose for which it was placed there. And the evidence of the condition of the gate, and the fact that, when the plaintiff's intestate and another man were either thrown or shoved against it, it at once sprung open and threw them on the ground, were sufficient to justify the jury in finding that the car was not a safe and proper car to transport the plaintiff's intestate to his destination. It is also quite clear that the unsafe condition of this car was the result of the conductor's negligence in refusing to comply with rule 34 of the company, and see to it that the gate was securely fastened before starting the car upon the trip. He testified that he saw before starting the car that this gate was so bent that it could not be fastened with the bolt employed for that purpose, and that instead of either straightening the gate so that the bolt could be used, or tying it up with wire, or some other substance, so that it could not be opened, he simply left it in the insecure condition that it was, subject to be thrown open upon the slightest pressure against it. It is also quite evident that the jury was justified from the evidence in finding that the plaintiff's intestate was free from contributory negligence. There is nothing to show that he had any knowledge of the condition of the gate. It is not, as matter of law, contributory negligence to stand upon the back platform of a street car, especially when all the seats in the car are filled, and it does not conclusively appear that plaintiff's intestate was at any time leaning upon the gate.

Several exceptions were taken to the admission of evidence, and to the charge of the court. None of them, we think, require that we should reverse this judgment, nor do they require special notice. Taking it as a whole, we think the charge of the learned judge was fully as favorable to the defendant as the evidence warranted; that the question presented a fair question of fact to the jury, which was submitted to them upon a charge very favorable to the defendant; and that their verdict should not be disturbed.

The judgment should therefore be affirmed, with costs. All concur.