MISSOURI PACIFIC RAILWAY COMPANY V. MARY LYONS, ADMINISTRATRIX.

FILED APRIL 21, 1898.   No. 7849.

1. **Injury to Servant:** CONTRIBUTORY NEGLIGENCE. Evidence examined, and *held* to sustain the jury's finding that the death of plaintiff's intestate was not caused by his negligence.

2. **Master and Servant:** RISKS OF EMPLOYMENT: FELLOW-SERVANTS. When one enters the employment of another, agreeing to serve him for a stipulated salary or wage, he thereby assumes, in the absence of an express contract to the contrary, the ordinary perils incident to that service, and included in these is the liability to injury at the hands of a negligent fellow-servant.

3. ———: NEGLIGENCE: FELLOW-SERVANTS.   The general rule is that where a master is not guilty of negligence in the selection or retention of servants, nor in furnishing them with suitable appliances for the performance of the work in which he employs them, he is not answerable to one of them for an injury caused by the negligence of a fellow-servant while both are engaged in the same work in the same department of the master's business.

4. ———: FELLOW-SERVANTS.   Where two switching crews are in the employ of the same railway company, subject to the control and direction of the same yardmaster, no member of either of said crews having any right of control or direction over any member of the other crew, both crews simultaneously engaged in switching the same cars from one part to another of the same switch yard, then the two crews and the members thereof are consociated in the same department of duty or line of employment, and each member of one crew is the fellow-servant of each member of the other crew.

ERROR from the district court of Douglas county. Tried below before FERGUSON, J. *Reversed.*

Contentions and citations of counsel appear in the opinion.

*John C. Watson, James W. Orr,* and *B. P. Waggener,* for plaintiff in error.

*T. J. Mahoney, contra.*

NORVAL, J., and RAGAN, C.

The switch yard of the Missouri Pacific Railway Company at Omaha, Nebraska, extends north and south, is more than a quarter of a mile in length, and it is down grade from the south end thereof. This switch yard is covered with a net-work of tracks. The first four, counting from the east side of the yard, are called the main-line track, the old main-line track, the train track and the west track, respectively. June 11, 1893, two shifting engines and crews were at work in this yard. The crew working in the south part of the yard was composed of the engineer and fireman of the switch engine and George Duncan, James Mordant, and Samuel Deems. Duncan was the foreman of the south crew. The crew working in the north end of the yard was composed of the engineer and fireman of the switch engine and B. F. Miller, John R. Hughes, and George Lyons, Miller being the foreman of that crew. All the men in both these crews were subject to the direction and control of the master of the switch yard, named Kennedy. He seems to have employed the men and had authority to discharge them. From day to day he determined what men should work in the switch yard and in what part of the yard each crew should work. The foreman of each crew had the direction of the men under his charge as to how the work should be done and what each should do, but was vested with no other control of the men under him. No

person in one crew had any direction or control over the members of the other crew. While each crew was assigned to work at a particular end of the yard, this seems to have been a matter of convenience, as either crew was at liberty to go to any part of the yard if the business in hand required. Both crews were engaged in transferring cars from one track to another, the crew at the south end taking cars from certain tracks or sidings, putting them on one of the tracks already mentioned, and running the cars down toward the north end of the yard, and there turning them over to the crew at work in the north end for further disposition. As it was down grade from the south to the north end of the yard it was customary, when a car was put on a track to go to the north end of the yard, for either Deems or Mordant to "ride the car down." On the date above stated, and at the time of the happening of the casualty hereinafter referred to, there were a number of cars standing on the train track, the third track from the east side of the yard, and standing pretty well down toward the south end thereof. A coal car was standing on the old main track pretty well toward the south end of the yard. Lyons, one of the north crew, was standing west of the west track; or, in other words, there were four tracks between him and the old main-line track. The north crew switching engine was on the old main-line track pretty well down toward the north end of the yard. With things in this situation, the crew at the south end of the yard switched a box car loaded with coal on the old main-line track. As this car started down the grade Deems, one of Duncan's crew, was about to board it for the purpose of "riding it down," when Duncan said to him: "Let that car go; let Jimmie [that is Mordant, the other man helping him] catch some of these cars." For some reason, not clearly shown by the record, Mordant did not "ride the car down," and it went down without any one upon it, came in contact with the coal car, loosened the brakes thereon, and both cars started down

the old main-line track toward the north end of the yard. The foreman of the crew in the north end, seeing these two cars, "hallooed" to warn the men on the switch engine of the approaching cars. Lyons, presumably for the same purpose, ran east toward the old main-line track, and, either because he did not observe the proximity of the two loose cars or because he attempted to board them, was struck by one of those cars and injured, from the effects of which he died. His widow, as administratrix, brought this suit against the railway company for damages. She had a verdict and judgment, to reverse which the railway company has prosecuted here a petition in error.

1. The administratrix in her petition claimed that the railway company had been guilty of negligence in employing or retaining in its employ Deems and Mordant, two of the men of the south crew, knowing that they were incompetent. We do not understand that the judgment in this case rests upon a finding made by the jury that the railway company was guilty of negligence in employing or retaining in its employ these two men, and the evidence in the record before us would not sustain a finding that the railway company had been guilty of negligence in employing or retaining in its employ either of these two men.

2. The administratrix also claimed in her petition that the proximate cause of the death of her husband was the negligence of the foreman, Duncan, in permitting this box car loaded with coal to run down the old main-line track with no one on it to control and stop it. We assume, for the purposes of this case only, that Duncan's permitting this box car loaded with coal to run down this track without some one on it to control and stop it was negligence and that this negligence was the proximate cause of the death of Lyons.

3. It is strenuously insisted by counsel for the railway company that Lyons' untimely death was the result of his own negligence; that he was standing some distance

west of the old main-line track on which the two wild cars were running when he first discovered them; that he was in a place of safety and that he voluntarily ran to the track on which the two cars were moving, and by reason of neglecting to observe their proximity to him or while attempting to board them received his injury; that his presence at the place where he was injured was not due to an order of his foreman nor made necessary by any of the demands of his employment, and, therefore, the finding of the jury that Lyons' injury was not the direct result of his own negligence is unsustained by sufficient evidence. But when we consider the circumstances surrounding Lyons at the time he left the place of safety, the two cars running down grade toward an engine standing upon the same track on which were an engineer and fireman, the certainty of a collision unless the cars were stopped, and the probabilities that if a collision occurred not only would there result a destruction of the property of the railway company but perhaps the loss of human life, we are not disposed to disturb the jury's finding which acquitted Lyons of negligence. Imprudent and unwise his conduct may have been, unselfish it certainly was, but, when examined in the light of all the surrounding circumstances, we cannot say as a matter of law that it was negligence. (*Omaha & R. V. R. Co. v. Krayenbuhl*, 48 Neb. 553.)

4. The district court instructed the jury as follows: "I instruct you, gentlemen, that on the 11th day of June, 1893, the foreman, Duncan, and Lyons were not fellow-servants within the rule that exempts the master from liability for the negligence of one fellow-servant causing injury to another, but, on the contrary, said Duncan was intrusted by the defendant with the control of such a part of the defendant's business as impressed upon him the duty of so conducting said part of said business as not to negligently or carelessly subject other servants of the company to unusual and unnecessary danger, and if you find from the evidence that said Duncan was guilty

of negligence in the discharge of said duty, such negligence is chargeable to the defendant." To the giving of this instruction the railway company excepted. Counsel for the administratrix concedes that if this instruction was erroneous the judgment must be reversed. It was doubtless the doctrine of the common law that a master was not liable for an injury inflicted upon one servant through the negligence of a fellow-servant. This is the English rule and, except where modified by statute, is the doctrine of the American courts. (See the rule stated and the authorities collated in 7 Am. & Eng. Ency. Law 821; 3 Wood, Railway Law, sec. 388.) This doctrine results from the nature of the contract between the employer and the employé. When one enters the employment of another agreeing to serve him for a stipulated salary or wage he thereby assumes, in the absence of an express contract to the contrary, the ordinary perils incident to that service, and included in these is the liability to injury at the hands of a negligent fellow-servant. The doctrine was thoroughly discussed by Evans, J., in *Murray v. South C. R. Co.*, 1 McMullan [S. Car.] 385, and by Shaw, C. J., in *Farwell v. Boston & A. R. Co.*, 4 Met. [Mass.] 49, the two leading cases in this country; and the rule is there declared to be founded not only upon principles of justice but upon considerations of public policy as well. To this general rule exempting the master from liability for the injury of one servant caused by the negligence of a fellow-servant there is this exception: The master himself must not have been guilty of negligence in the selection or retention of the offending servant, tool, or appliance. To bring the master within the protection of the rule the relation existing between the offending and the injured servant must not have been that of master and servant. The offending servant must not have been the *alter ego* of the master. The negligent servant must have been a co-laborer, a co-servant— that is, a fellow-servant with the injured one in the performance of the work in and about which the injury

occurred. The general rule is admirably stated by the supreme court of Massachusetts in *Farwell v. Boston & A. R. Co., supra,* in the following language: "Where a master uses due diligence in the selection of competent and trusty servants, and furnishes them with suitable means to perform the service in which he employs them, he is not answerable to one of them for an injury received by him in consequence of the carelessness of another while both are engaged in the same service."

With an apology to the profession for this digression, and statement of a rule so familiar, we now proceed to inquire whether Duncan and Lyons were fellow-servants within the meaning of the rule just stated. This is always the difficult question in this class of cases, and he who asserts that two servants of the same master under a certain state of facts are or are not fellow-servants will have little trouble to find some case which will tend to support his contention. Counsel for the administratrix insists that Duncan and Lyons were not fellow-servants, and cites in support of this contention the following cases: *Atchison, T. & S. F. R. Co. v. Moore,* 29 Kan. 632; *Baltimore & O. R. Co. v. Baugh,* 149 U. S. 368; *Garrahy v. Kansas City, S. J. & C. B. R. Co.,* 25 Fed. Rep. 258; *Texas & P. R. Co. v. Reed,* 31 S. W. Rep. [Tex.] 1058; *Chesson v. Roper Lumber Co.,* 23 S. E. Rep. [N. Car.] 925; *Gowan v. Bush,* 22 C. C. A. 196; *Illinois C. R. Co. v. Hilliard,* 37 S. W. Rep. [Ky.] 75; *Houston & T. C. R. Co. v. Talley,* 39 S. W. Rep. [Tex.] 206; *West Chicago S. R. Co. v. Dwyer,* 57 Ill. App. 444; *Pendergast v. Union R. Co.,* 41 N. Y. Supp. 927; *Denver Tramway Co. v. Crumbach,* 48 Pac. Rep. [Colo.] 503; *Rouse v. Downs,* 47 Pac. Rep. [Kan.] 982. On the other hand, counsel for the railway company insist that Duncan and Lyons were fellow-servants, and in support of their contention cite the following cases: *O'Leary v. Wabash R. Co.,* 52 Ill. App. 641; *Clarke v. Pennsylvania Co.,* 31 N. E. Rep. [Ind.] 808; *Pittsburg C. & S. L. R. Co. v. Adams,* 5 N. E. Rep. [Ind.] 837; *Baltimore & O. R. Co. v Baugh,* 149 U. S. 368; *Warmington v. Atchison, T. & S. F.*

*R. Co.*, 46 Mo. App. 159; *Wellman v. Oregon S. L. & U. N.
R. Co.*, 21 Ore. 530, 28 Pac. Rep. 625; *St. Louis, I. & S.
R. Co. v. Needham*, 63 Fed. Rep. 107; *Northern P. R. Co. v.
Mase*, 63 Fed. Rep. 114; *Norfolk & W. R. Co. v. Hoover*, 29
Atl. Rep. [Md.] 660; *Herrington v. Lake S. & M. S. R. Co.*,
31 N. Y. Supp. 910; *Thom v. Pittard*, 62 Fed. Rep. 232;
*Ell v. Northern P. R. Co.*, 48 N. W. Rep. [N. Dak.] 222;
*Frazer v. Red River Lumber Co.*, 45 Minn. 235; *Ohio & M.
R. Co. v. Robb*, 36 Ill. App. 627; *Unfried v. Baltimore & O.
R. Co.*, 34 W. Va. 260; *Kerlin v. Chicago, P. & St. L. R. Co.*,
50 Fed. Rep. 185; *Baltimore & O. R. Co. v. Andrews*, 50
Fed. Rep. 728; *Marshall v. Schricker*, 63 Mo. 308; *What
Cheer Coal Co. v. Johnson*, 56 Fed. Rep. 810; *Harley v.
Louisville & N. R. Co.*, 57 Fed. Rep. 144; *McBride v. Union
P. R. Co.*, 21 Pac. Rep. [Wyo.] 687; *O'Brien v. American
Dredging Co.*, 21 Atl. Rep. [N. J.] 324; *Sherrin v. St.
Joseph & St. L. R. Co.*, 15 S. W. Rep. [Mo.] 442; *Chicago
& A. R. Co. v. May*, 108 Ill. 288. Not all the cases cited
by counsel sustain their respective contentions, and we
shall not attempt a review of these cases, or any of them;
nor shall we attempt to formulate a rule which will af-
ford a test for determining in all cases whether two
servants are or are not fellow-servants within the mean-
ing of that term, but leave that question to be determined
in each case from the particular facts and circumstances
of the case in which the question is presented.

In *Moore v. Wabash, St. L. & P. R. Co.*, 85 Mo. 588, it was
said: "If we may venture a general proposition on the
subject, it is that all are fellow-servants who are engaged
in the prosecution of the same common work having no
dependence upon or relation to each other except as co-
laborers, without rank, under the direction and manage-
ment of the master himself, or of some servant placed
by the master over them."

The supreme court of North Dakota, in *Ell v. Northern
P. R. Co.*, 48 N. W. Rep. 222, laid down this proposition:
"The negligence of a servant engaged in the same gen-
eral business with the injured servant is the negligence

of a fellow-servant, whatever position the former occupies with respect to the latter, as to all acts which pertain to the duties of a mere servant as contradistinguished from the duties of the master to his employés."

In *O'Leary v. Wabash R. Co.*, 52 Ill. App. 641, it was held that two switching crews employed in the same railroad yard, the one in delivering cars, and the other in receiving them as kicked across the main tracks, are fellow-servants.

The supreme court of Indiana, in *Clarke v. Pennsylvania Co.*, 31 N. E. Rep. 808, held that a member of one section-gang and the boss of another section-gang employed by the same railroad company were fellow-servants. The same court in *Pittsburg C. & St. L. R. Co. v. Adams*, 5 N. E. Rep. 837, held that a servant could not recover for an injury caused by the negligence of a co-servant in the same line of employment, although of a superior grade, unless the negligent servant occupies the place of a vice-principal as to the injured servant.

The cases cited by the respective counsel in this case, including the cases just noticed, we think justify the following conclusion: Where two switching crews are in the employ of the same railway company, subject to the control and direction of the same yardmaster, no member of either of said crews having any right of control or direction over any member of the other crew, both crews simultaneously engaged in switching the same cars from one part to another of the same switch yard, then each member of one crew is the fellow-servant of each member of the other crew, although the foreman of each crew may sustain the relation of vice-principal to the members of his own crew; and this is because, to paraphrase the language of IRVINE, C., in *Union P. R. Co. v. Erickson*, 41 Neb. 1, the two crews and the members thereof are consociated in the same department of duty or line of employment. An analysis of the instruction under consideration shows that the district court reached the conclusion that Duncan and Lyons were not fellow-

45

servants, because the court was of opinion that Duncan had been delegated by his master to control and direct a certain line or department of its business, and, therefore, Duncan represented the railway company and his negligence was its negligence. But this is a mistake. There is no dispute as to the facts, and the uncontradicted evidence is that Duncan and Lyons were both in the employ of the same master, subject to the orders and directions of the same yardmaster, neither one having any right of control or direction of the other. They were not engaged in a separate line of the company's business or in a separate department of the company's service. They were both engaged in the same switch yard. They were both handling the same cars. They were associated together in the same department of the company's service and transacting identically the same business. The doctrine announced in this instruction would make a switch tender in a switch yard a vice-principal as to a fellow-switchman riding a car from the main line to a side track. It would make a brakeman on a car, whose duty it was to set a brake; a vice-principal as to his fellow-brakeman about to couple the car to another. The theory of the district court was that, because it was Duncan's business to switch cars from the south end of the switch yard toward the north end and there deliver them to the north switching crew, he was, therefore, engaged in a separate department or line of the company's service from that of the members of the north switching crew, and, therefore, he was performing a duty personal to the master and represented him. But Duncan was not performing a duty which the law required the master to perform. He was not engaged in a separate and distinct department of the company's service from the members of the north crew. As to the members of the north crew he was not a vice-principal. Had he been the instruction would have been correct.

The conclusion we have reached in this case does not conflict with any decision of this court.

*Smith v. Sioux City & P. R. Co.*, 15 Neb. 583, *Chicago, St. P., M. & O. R. Co. v. Lundstrom*, 16 Neb. 254, *Burlington & M. R. R. Co. v. Crockett*, 19 Neb. 138, *Omaha & R. V. R. Co. v. Krayenbuhl*, 48 Neb. 553, and *Union P. R. Co. v. Doyle*, 50 Neb. 555, were all cases in which the master was held liable for the injury to one servant which resulted from the negligence of a co-servant. But in these cases, and each of them, the offending servant sustained to the injured one the relation of vice-principal and was invested with the right of control and direction not only of the work in hand but of the injured servant.

*Union P. R. Co. v. Erickson*, 41 Neb. 1, was a case in which the railway company was held liable for an injury which a track hand standing by the side of the road received from being struck by a lump of coal which fell from the tender of a rapidly passing engine, and the company was held liable. But the decision rests upon the principle that the employés of the company engaged in the business of loading the engine tenders with coal were engaged in a distinct and separate department of the company's service from the department to which the injured section hand belonged; that the two servants, though in the employ of the same master, were not engaged in the same department of the company's business.

In *Chicago, B. & Q. R. Co. v. Kellogg*, 54 Neb. 127, the railway company was held liable for an injury which its station agent had sustained while attempting to set a defective brake on a car left at his station, the injury resulting from the negligent failure of the car inspectors of the road to discover and properly repair the defective brake. But this case rests upon the principles that it was the duty of the master to furnish brakes for its cars which were reasonably safe and fit for the purposes for which they were intended, and that the employés whose duty it was to inspect and repair brakes were engaged in a separate and distinct department of the service from that of the station agents of the master.

The judgment of the district court is reversed and the cause remanded.

REVERSED AND REMANDED.