SAMUEL P. JUSTUS, APPELLANT, V. LINCOLN TRACTION COM-
PANY, APPELLEE.

FILED JUNE 13, 1911. No. 16,488.

1. **Master and Servant: FELLOW SERVANTS.** One who for the purpose
of qualifying himself to serve a street railway company as a con-
ductor is permitted to go upon its cars and perform such service
as the conductor directs is the company's servant, notwithstanding
he receives no wages from his master. The motorman upon the
car is his fellow servant.

2. **New Trial: RELIEF IN EQUITY.** If in an action in equity to secure a
new trial of an action at law it appears that the plaintiff's evi-
dence in the law action did not establish a cause for action
against the defendant, and that the court in that action fairly
submitted the controversy between the parties, a new trial will
not be granted, notwithstanding the plaintiff was prevented by
accident from securing a transcript of the record of his law case
until too late to give this court jurisdiction on appeal.

APPEAL from the district court for Lancaster county:
ALBERT J. CORNISH, JUDGE. *Affirmed.*

*T. J. Doyle* and *G. L. De Lacy,* for appellant.

*Clark & Allen, contra.*

ROOT, J.

In March, 1907, the plaintiff in order to qualify him-
self for the occupation of a street car conductor, and
by the direction of the defendant's superintendent, accom-
panied one of its conductors upon a car. The conductor
was to instruct the plaintiff in the duties incident to the
vocation. The plaintiff was injured before daylight and at
a time when no passengers were in the car. The con-
ductor and the plaintiff were each reading a newspaper as
the car approached a switch which, if opened, would per-
mit the car to pass from one railway to another. The
motorman shut off the greater part of the electric current,

opened the switch, and again applied the current so that the speed of the car was suddenly accelerated. In the meantime the conductor, evidently under the impression that the car had stopped at a railway crossing one block distant, said to the plaintiff: "He (meaning the motorman) is waiting for you to flag the crossing." The following is quoted from the plaintiff's testimony: "And so I got up and threw the paper down and went to the rear end of the car, and just as I went to step off the car the car started with a sudden jerk, and instead of being plumb still—I thought it was still, but evidently the motorman had opened the switch and the car was slowly moving, and there was another car coming on the south track at that time, coming right by and ringing the bell, and by the noise of this car I could not recognize the fact that this car was moving at all. I thought it was absolutely still, but it was not, as I learned later. When I went to step to the street, the motorman turned the current on heavier, and the car started with a sudden jerk that throwed me in the street." The plaintiff further testified, in substance, that the conductor theretofore told him the cars were always flagged over the railway crossings, that is, that the motorman would stop the car when close to the crossing, and it was the conductor's duty to alight, walk ahead until he had a clear view of the railway track, and, if there were no approaching trains, to signal the motorman to proceed. He also testified that the conductor "told me to never alight from the car or board the car when it was in motion until I learned the business, that I would get hurt if I did. He said there was danger in doing that, and always alight from the rear and get on the rear of the car when I went to get on the car."

The defendant's negligence pleaded in the plaintiff's petition in the law action is that the conductor told the plaintiff they were at the crossing, for him to get off the car and flag it, and that while he was obeying that order "the defendant negligently and carelessly through its employees started said car with a quick jerk and rapid

speed, throwing said plaintiff through said negligence and carelessness, violently to the ground." The court instructed the jury that the plaintiff and the motorman were fellow servants, and no verdict should be returned for the motorman's negligence, but that, if the conductor negligently directed the plaintiff to alight from the car and he was injured while obeying the order, they should find in his favor, unless they found from the evidence that he was guilty of negligence which proximately contributed to the injury. The court also told the jury that the plaintiff would be guilty of such negligence if he alighted from the car while it was in motion.

There is a difference of opinion between counsel as to whether the plaintiff was in the defendant's employ or whether he was a mere licensee or invitee. Upon this subject interesting briefs have been submitted. We conclude that the district court was right in instructing the jury that the plaintiff was the defendant's servant within the meaning of the law of master and servant. The plaintiff was under the defendant's control preparing himself for its service and actually performing parts of that service as he acquired knowledge of its details. The fact that he did not receive wages during his apprenticeship does not destroy the relation. The opportunity given him to acquire the knowledge and skill to qualify him for the position he desired was the compensation he received for the services performed. *Barstow v. Old Colony R. Co.,* 143 Mass. 535; *Ladd v. Brockton Street R. Co.,* 180 Mass. 454; *Weisser v. Southern P. R. Co.,* 148 Cal. 426; *Millsaps v. Louisville, N. O. & T. R. Co.,* 69 Miss. 423.

We do not understand that counsel for plaintiff complain of the court's instruction that the motorman and the plaintiff were fellow servants, if it be conceded that the relation of master and servant existed between the plaintiff and the defendant. Neither servant had any control over the other. Both under the control of the conductor were engaged in running the car and were fellow servants. *Chicago, B. & Q. R. Co. v. Howard,* 45 Neb. 570;

*Missouri P. R. Co. v. Lyons,* 54 Neb. 633. Whether they were fellow servants or not, the evidence does not prove that the motorman did anything out of the ordinary in guiding his car from one track to the other or in accelerating its speed at the time and in the manner testified to by the plaintiff.

There then remains but the alleged negligence of the conductor for consideration. While it is pleaded in the petition that the conductor ordered the plaintiff to alight from the car and flag it over the crossing, and the plaintiff so testified, yet, when he repeats the language of the order, it is not a command, but a simple statement that the motorman is waiting for the plaintiff to flag the crossing. Construing the statement in the light of the instruction previously given, that it was the conductor's duty to alight and flag the car over the crossing, it may in reason be said that the conductor suggested that the plaintiff should alight. The conductor had also instructed the plaintiff not to board or alight from the car while it was in motion. In the absence of anything peremptory in the direction to flag the car, the statement should not be construed as an order to get off the car before it stopped. The plaintiff admits that the car was slowly moving when he started to step therefrom. If the plaintiff had grasped the handhold, he would not have been precipitated into the street, or, if he had followed the instruction to wait until the car stopped, he would not have been injured. The plaintiff had been instructed and warned about the danger incident to getting on or off of a moving car and knew there was a risk connected with such conduct. We do not believe that a dispassionate consideration of the evidence by a jury properly instructed concerning the principles of law that should control the case would result in a verdict for the plaintiff. In the light of the plaintiff's evidence, the court's charge is fair, and in our judgment should not be construed as contended for by the plaintiff's counsel.

Upon the entire record before us, we are constrained to

38

find that none of the rulings or orders made in the action at law were prejudicial to the plaintiff and that he has no cause for action against the defendant. The accident is to be regretted; it resulted in serious injury to the plaintiff, but the defendant is not by the law of the land made liable therefor. It would serve no good purpose to reopen the controversy, and a court of equity will not set aside a judgment for the sole purpose of permitting the defeated litigant to again press a demand which cannot be sustained.

The judgment of the district court therefore is

AFFIRMED.